UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:22-cr-00016-GFVT-MAS-1 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | & |
| BILLY J. WILKINS, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Billy Wilkins's Motions to Dismiss Counts Five and Six of the Indictment. [R. 104; R. 108.] Mr. Wilkins is a convicted felon. He has been found guilty in state court for felony wanton endangerment, trafficking controlled substances, and others. Now, facing charges for possession of a firearm despite his felony convictions and for possession of a firearm in furtherance of a drug crime, Mr. Wilkins argues that the Second Amendment prevents the Government from disarming him. However, the Second Amendment is a right that America inherited from England, and as such, it carries with it historical limitations. The Court will adhere to its decisions in *Goins* and *Taylor* and hold that the Government may disarm Mr. Wilkins because he presents a threat to the public. Accordingly, the Court **DENIES** Mr. Wilkins's Motions to Dismiss **[R. 104; R. 108]**.

I

In November 2021, the Jessamine County Sheriff's Department executed a search warrant on Mr. Wilkins's residence. [R. 41 at 1.] The police found a revolver in the living room ottoman, a pistol under the bathroom sink, and a trafficking quantity of various drugs. *Id.* at 2;

[R. 25-2.] A grand jury returned an indictment charging Mr. Wilkins with six counts, including charges for possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). [R. 45.]

Mr. Wilkins now moves to dismiss these two counts of his indictment.[1] [R. 104; R. 108.] Mr. Wilkins argues that Count Six, charging him with unlawful possession of a firearm by a felon, violates the Second Amendment. [R. 104 at 2.] He also argues that the Court must dismiss the charge because Section 922(g)(1) is unconstitutionally vague. [R. 104 at 7.] Finally, Mr. Wilkins argues that Count Five, charging him with possession of a firearm in furtherance of a drug crime, violates the Second Amendment. [R. 108.]

## II

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008) and in *McDonald v. Chicago*, 561 U.S. 742 (2010), the Supreme Court clarified that this protection guarantees "the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *New York State Rifle & Pistol Assoc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022). Recently, the Court held that the Second Amendment also protects "an individual's right to carry a handgun

---

[1] After briefing concluded, Mr. Wilkins filed a supplemental citation, informing the Court of the Fifth Circuit's opinion in *United States v. Daniels*, No. 22-60596, 2023 U.S. App. LEXIS 20870, at *2 (5th Cir. Aug. 9, 2023). [R. 115.] In *Daniels*, the court dismissed the defendant's 18 U.S.C. § 922(g)(3) charge because it found that prohibiting the defendant, as an occasional marijuana user, from possessing firearms was not consistent with the nation's historical tradition of firearm regulation. *Id.* Mr. Wilkins then requested a status conference "to discuss whether the Court would like for the parties to brief any implications that Daniels may have." [R. 116 at 1.] While the Court welcomes citations to new opinions, *Daniels*—decided by a different circuit on a different statute—does not change the Court's analysis. The Court therefore will deny Mr. Wilkins's motion for a status conference. Mr. Wilkins also moves for oral argument on his motions. [R. 121.] However, the Court finds that the United States's forty-six-page response and Mr. Wilkins's forty-one-page reply are sufficient to resolve the matter. [R. 110; R. 114-1.] The Court will thus deny Mr. Wilkins's motion for hearing. [R. 121.]

for self-defense outside the home." *Id.* In doing so, the Court replaced the prevailing test for reviewing laws that restrict the right to bear arms. *Id.* at 2125-26. Previously, federal courts applied a two-step approach that assessed history and then conducted means-end scrutiny. *Id.* at 2125.

*Bruen* dispensed with the scrutiny analysis and clarified that courts use only a historical analysis in Second Amendment cases. *Id.* at 2126. The Second Amendment's meaning at the time that it was enacted defines its scope. *Id.* at 2126, 2137. Then, only "if a regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified control.'" *Id.* at 2126.

### A

### 1

This Court considered similar Second Amendment challenges to 18 U.S.C. § 922(g)(1) in *United States v. Goins*, No. 5:22-cr-00091-GFVT-MAS-1, 2022 U.S. Dist. LEXIS 229543 (E.D. Ky. Dec. 21, 2022) and *United States v. Taylor*, No. 3:22-cr-00022-GFVT-EBA-1, 2023 U.S. Dist. LEXIS 15973 (E.D. Ky. Jan. 31, 2023). In *Goins*, the Court applied *Bruen's* framework and assessed the history relevant to the Second Amendment to find an analog for Section 922(g)(1). *Id.* at *7-12. From a deeply rooted English common law tradition that the colonies inherited, the Court found that the Second Amendment does not prevent Congress from disarming those that it deems to be a danger to public safety. *Id.* at *12.

That tradition begins with the 14th Century Statute of Northampton, which prohibited Englishmen from bringing "force in affray of the peace . . . upon pain to forfeit their Armour to the King . . . ." *Id.* at *10 (quoting *Bruen*, 142 S. Ct. at 2139). Over time, the statute fell into disuse but not complete irrelevance. *Id.* (quoting *Bruen*, 142 S. Ct. at 2140-41). During a 17th

3

century trial, a court observed that "the act of 'go[ing] armed to terrify the King's subjects' was 'a great offence at the common law' . . . ." *Id.* (quoting *Bruen*, 142 S. Ct. at 2141). Around this time, Parliament embodied that tradition in an act that permitted officers of the Crown to "disarm anyone they judged to be 'dangerous to the Peace of the Kingdom.'" *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 456 (7th Cir. 2019) (Barrett, J., dissenting)). Indeed, founding-era, American legislatures similarly used this tradition to "categorically disarm[] groups whom they judged to be a threat to the public safety." *Id.*

History comports with common sense. While the Second Amendment creates a right to bear arms, its scope is limited by Congress's traditional power to disarm people that pose a threat to public safety. And Congress can base the decision to disarm a class of people upon modern judgments as to "the categories of people whose possession of guns would endanger the public safety . . . ." *Id.* at *12 (quoting *Kanter*, 919 F.3d at 464 (Barrett, J., dissenting)); *see also United States v. Jackson*, 69 F.4th 495, 505-06 (8th Cir. 2023) (concluding that "legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms.").

Neither the Government nor Mr. Wilkins agrees with the Court's reading of history. For his part, Mr. Wilkins argues that "the real distinction is between public and private possession." [R. 114-1 at 25.] He argues that, even if history and tradition allow the government to prohibit possession in public areas, no historical analogue exists for prohibiting firearms possession within the home. *See id.* at 26. But as explained further by this Court's opinion in *Goins*, history and tradition support Congress's power to disarm those that it deems dangerous absolutely. 2022 U.S. Dist. LEXIS 229543, at *24. For example, the Statute of Northampton punished individuals by making them "forfeit their Armour to the King." *Id.* at *10 (quoting *Bruen*, 142 S. Ct. at

4

2139).  It did not force individuals to "forfeit their Armour" *unless in the home*.  Though Mr. Wilkins suggests that historical practices must specify that the prohibition includes possession in the home, *Bruen* requires only a "representative historical *analogue*, not a historical *twin*."  142 S. Ct. at 2133.  A historical practice that allows Congress to prohibit firearm possession absolutely also supports Congress's power to prohibit firearm possession in the home.

The Government also argues the Court decided *Goins* incorrectly.  The United States contends that Congress has "the authority to disarm even non-violent people whom they deemed not to be law-abiding and trustworthy."  [R. 110 at 29.]  These people, it argues, "do not fall within 'the people' provided in the text of the Second Amendment." *Id.* at 15.  So, the United States argues for a broader limitation on the Second Amendment's scope than the Court found in *Goins*.  The Court will not reevaluate its historical analysis in *Goins* at this time.  Regardless, the United States's concerns with the Court's decision in *Goins* do not affect the outcome of Mr. Wilkins's motion.  Under either the United States's proposed broad definition of Congress's power to disarm felons or under the Court's slightly stricter rule, Mr. Wilkins's Second Amendment rights are not violated by Section 922(g)(1).

2

Mr. Wilkins presents the sort of danger to the public on which a legislature can base a disarmament law.  Mr. Wilkins has been convicted of sixteen felonies, including felony offenses for trafficking controlled substances, receiving stolen property, tampering with physical evidence, second degree escape, first degree fleeing police, and wanton endangerment.  *See id.* [*See* R. 110 at 2-4.]  Mr. Wilkins's drug crimes alone justify stripping him of his Second Amendment rights.  Congress is aware "that drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993) (citing statistics on the percentage of murders

5

relating to the drug trade). Serious drug offenses, like distribution or possession with intent to distribute, are inherently violent offenses that justify disarming those who commit them. *See United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011). Mr. Wilkins was convicted of five felonies for trafficking a controlled substance. [*See* R. 110 at 2-4.]

Mr. Wilkins's felony convictions for wanton endangerment also allow Congress to prohibit him from possessing a firearm. Under Kentucky law, a person is guilty of wanton endangerment when, "under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." Ky. Rev. Stat. Ann. § 508.060(1). Mr. Wilkins has three convictions for wanton endangerment. [R. 104-1.] Therefore, on three occasions, a court found that Mr. Wilkins created a substantial danger to another person under circumstances manifesting extreme indifference to the value of human life. Ky. Rev. Stat. Ann. § 508.060(1).

The issue of how Section 922(g) burdens Mr. Wilkins's rights is simple. It categorically disarms him. The relevant inquiry is why Congress seeks to take away his right to bear arms. As discussed in *Goins*, the traditional justification that the Founders would have understood is that Mr. Wilkins poses a danger to public safety. *Goins*, 2022 WL 17836677, at *12. His past convictions show that he clearly does. [R. 104-1.] Accordingly, the United States does not violate the Second Amendment by bringing a 922(g)(1) charge against Mr. Wilkins.

**B**

Mr. Wilkins also argues that the Court must dismiss his 922(g)(1) charge because the statute is unconstitutionally vague. [R. 104 at 7.] The traditional basis of the vagueness doctrine is that the government must write laws that provide fair notice to those that obey them. *Columbia Nat. Res. v. Tatum*, 58 F.3d 1101, 1105 (6th Cir. 1995). A criminal statute is

6

unconstitutionally vague if it defines an offense in such a way that "ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." *United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990) (citing *Kolender v. Lawson*, 461 U.S. 352, 355 (1983)). Here, the statute prohibits any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from possessing any firearm or ammunition in or affecting commerce. 18 U.S.C.S. § 922(g)(1). As to the statute, Mr. Wilkins concedes that "on its face, § 922(g)(1) seemingly is clear cut." [R. 104 at 8.]

Rather, Mr. Wilkins argues that the Supreme Court's decision in *Bruen* established an unworkable framework for Second Amendment questions. *Id*. And with an unclear scope of the Second Amendment, ordinary people cannot understand what conduct the government may prohibit. *Id*. This misunderstands vagueness challenges. Simply, vagueness focuses only on the statute regulating a person's conduct. *See Avant*, 907 F.2d at 625 (noting that a vagueness challenge analyzes how the statute defines the prohibited conduct). A Supreme Court decision does not alter this statutory analysis. Indeed, "[n]o precedent supports the proposition that a party may attack a Supreme Court decision as void for vagueness." *Tatum*, 58 F.3d at 1106.

On the other hand, the general rule is that a vagueness challenge "to an offense will not be entertained where a defendant's conduct clearly falls within the ambit of the statute." *United States v. Jamerson*, 536 Fed. App'x 606, 609 (6th Cir. 2013). Here, in Mr. Wilkins's terms, 922(g) conditions that "if you are a felon then you cannot have a gun." [R. 104 at 8.] Mr. Wilkins was a felon. [R. 104-1.] And he had a gun. [R. 114-1 at 2-3.] Therefore, his conduct clearly falls within the ambit of the statute and Mr. Wilkins fails to show that 922(g)(1) is void for vagueness. *See Jamerson*, 536 Fed. App'x at 609.

7

His vagueness challenge has a second problem. Mr. Wilkins does not argue that the statute is vague as applied to his circumstances. This is also fatal to his claim. Although a vagueness analysis in the context of first amendment rights may involve consideration of hypothetical facts not specifically before the court, "it is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) (quoting *United States v. Powell*, 423 U.S. 87, 92 (1975)). Mr. Wilkins does not argue that 922(g)(1) is vague when considering his circumstances. [R. 104 at 7-11.] Therefore, Mr. Wilkins does not show that his 922(g)(1) charge should be dismissed because the statute is vague.

### C

Mr. Wilkins challenges his Section 924(c) charge under the Second Amendment. Section 924(c) makes it a crime to possess a firearm in furtherance of a crime of violence or a drug trafficking crime. 18 U.S.C.S. § 924(c)(1). Mr. Wilkins posits that the question "is whether the government can intrude on Mr. Wilkins' ability to possess a firearm within his residence, even if it has a connection to trafficking drugs." [R. 114-1n at 29.] The Sixth Circuit recently answered this question in the affirmative.

In *United States v. Burgess*, the government sought a sentencing enhancement that applied when a defendant possessed a weapon during the commission of an offense. No. 22-1110/22-1112, 2023 U.S. App. LEXIS 873, at *9 (6th Cir. Jan. 13, 2023). Police found nearly fifty firearms in the defendant's home where she sold drugs, including in spaces close to where she stored drugs. *Id.* at *10. The Court noted that it previously decided that "the historical understanding of the right to keep and bear arms" did not "extend to possession of weapons for

8

unlawful purposes." *Id.* at *14 (citing *United States v. Greeno*, 679 F.3d 510, 520 (6th Cir. 2012)). And "*Bruen* did not disturb that holding." *Id.* Because Mr. Wilkins's motion concedes that he possessed a firearm in furtherance of a drug trafficking crime, he cannot look to the Second Amendment for solace. [R. 114-1 at 2-3.] Therefore, Mr. Wilkins does not show that the United States's Section 924(c) charge violates the Second Amendment.

### III

Congress can disarm people that pose a danger to the public without violating the Second Amendment. Whether one looks to modern or historical assessments, felons like Mr. Wilkins are regarded as similarly dangerous. Section 922(g)(1) does not violate Mr. Wilkins's Second Amendment rights. Similarly, the right to keep and bear arms does not extend to possession of arms for unlawful purposes. Section 924(c) does not violate Mr. Wilkins's Second Amendment rights. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Mr. Wilkins's Motion for Leave **[R. 114]** is **GRANTED**;
2. Mr. Wilkins's Motion for Status Conference **[R. 116]** is **DENIED**;
3. Mr. Wilkins's Motion for Hearing **[R. 121]** is **DENIED**;
4. Mr. Wilkins's Motion to Dismiss Count 6 **[R. 104]** is **DENIED**; and
5. Mr. Wilkins's Motion to Dismiss Count 5 **[R. 108]** is **DENIED**.

This the 15th day of September, 2023.

Gregory F. Van Tatenhove
United States District Judge

10